IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

GWENDOLYN MERCER      :
      :
    Plaintiff,      :
      :
    v.      :
      :    **No. 5:10-cv-324 (CAR)**
PERDUE FARMS, INC.,      :
      :
    Defendant.      :
_____      :

## ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Before the Court is Defendant Perdue Farms, Inc.'s, Motion for Summary Judgment [Doc. 20]. Plaintiff Gwendolyn Mercer originally brought suit under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201, et seq., for alleged unpaid wages/overtime, and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq., for claims of race and gender discrimination, hostile work environment, and retaliation. Plaintiff has abandoned her FLSA, hostile work environment, and retaliation claims. Thus, Plaintiff's race and gender discrimination claims are the only two at issue. After fully considering the matter, Defendant's Motion for Summary Judgment [doc. 20] is **GRANTED in part** and **DENIED in part**. Specifically, the Court

1

finds that a triable issue of fact exists as to whether Defendant intentionally discriminated against Plaintiff's race when it terminated her; thus, Defendant's Motion for Summary Judgment is **DENIED** as to that claim.  Regarding the remaining claims against Defendant—unpaid wages/overtime, hostile work environment, retaliation, and race discrimination with regard to her termination, and race and/or gender discrimination with regard to her suspension—Defendant's Motion for Summary Judgment is **GRANTED**.

## BACKGROUND

The relevant facts in the light most favorable to Plaintiff are as follows[1]: Plaintiff, an African-American female, was hired as a maintenance mechanic in January 2007 at Perdue Farms, Inc., in Georgia.  Plaintiff worked with a team of other mechanics; she was the only African-American female on her team.

Michael Reed was Lead Mechanic, or Line Lead, for Plaintiff's team.  Although he was "not a supervisor," he did manage the mechanics "on [his] end of the plant," verifying that their work assignments were complete and correct.  Reed Dep. 7:23-8:1. In addition to Reed, Plaintiff appears to have two other relevant superiors: Richard

---

[1] Although Defendant is correct in noting that Plaintiff's statement of material facts does not comply with Local Rule 56, the Court nevertheless accepts Plaintiff's filing for the purposes of this Motion and will treat the Plaintiff's deficient Response as proper.

Griffin and Sam Calloway.  In July 2008, Richard Griffin, as Maintenance Supervisor, was Plaintiff's immediate supervisor.  Sam Calloway was the Maintenance Planner and was in charge of planning and scheduling the work orders eventually completed by Plaintiff and other maintenance mechanics.  Although the Court is unclear of the exact hierarchy of superiors, the Court is able to deduce from the record that Griffin and Calloway were Reed's superiors, and that Reed, although not a supervisor or in a managerial position, managed Plaintiff's work.  The exact hierarchy beyond this initial deduction is irrelevant for the purposes of this Motion.

Work Environment

Maintenance mechanics perform preventative maintenance work orders, or regular maintenance, on the machines in Line One to keep them in working order. The mechanics receive the work orders from the maintenance planners and their Line Lead.  Being a mechanic is an around-the-clock job; the mechanics are assigned to either work days or nights.

Relevant to the work environment of Defendant's plant is Don Brown's testimony.  Don Brown, an African-American, was an employee of Defendant who received two promotions after entering as a Maintenance Mechanic in June 2006: Line Lead in early 2007 and Maintenance Supervisor in 2008.  In September 2008, Brown

3

was demoted from Supervisor to Line Lead, a position he held until he left in February

2010. When asked why he was demoted, he responded as follows:

> As a supervisor, … I told [Ferrell about] a time when I sent him an email
> and HR an email about Clint Brantley and Eric Buttrom [both Caucasian
> males] missing excessive days and nothing being done to them, where
> other [African-American] individuals were missing days and they were
> being written up and punished for it. … His response was that doesn't
> concern you. You're management. You're management now. That's the
> only concern. That doesn't concern you. And I told him, well, what do I
> have to do to become lead again. And he said, well, I'll check into it.
> Then after several times of me and him having talks and him saying he'll
> check into it, he finally came back and told me that management decided
> they would rather me go back to being lead rather than lose me
> altogether.

Brown Dep. 9; 10. Brown testified that he eventually quit his job because he did not

agree with the "favoritism" towards Caucasian employees that was as "plain as day."

Id. at 10-11. This was, he testified, "the reason why everybody was surprised that I

got the supervisor position." Id. at 10:24-25.

With regard to whether Brown had seen Griffin discriminate against African-

Americans, Brown testified that he had observed this with certain individuals

although could not remember if he had ever seen Griffin discriminate against Plaintiff

specifically. Brown did, however, testify that he had observed an argument between

Plaintiff and Ferrell where Ferrell had "just went crazy," "cursing and fussing" at

4

Plaintiff because "something wasn't right on the line." Id. at 12:14-20. Plaintiff responded angrily at the accusation, and later was called into Ferrell's office where he told her he had been wrong; it turned out that Plaintiff was not at fault for the mechanical problem. Aside from offering this testimony immediately following his response to whether he had seen Griffin discriminate Plaintiff because of her race, Brown does not otherwise connect this incident to Plaintiff's race or gender.

August 2008 Suspension

In August 2008, Plaintiff was suspended for "poor job performance." The Disciplinary Record of the Suspension (DRS) was signed by Plaintiff, Griffin, and Kathy Denney, a Human Resources Representative for Defendant. The DRS states that Plaintiff "failed to follow instructions [requiring] someone else had to do [Plaintiff's] work," and that Plaintiff made her own emergency work orders without permission or instruction of her supervisors. [2] Doc. 28, Ex. 1.

November 2008 Termination

---

[2] Defendant maintains that Plaintiff was suspended for failing to do the "preventative maintenance assigned, misrepresented that it had been done by the night shift, and instead documented unauthorized training that she had attended instead of work assigned to her." Doc. 32, p.12. Reading the facts in the light most favorable to Plaintiff, for the purpose of her prima facie case, the Court will accept the reasons listed in the DRS as the reasons for her suspension.

On November 2, 2008, Reed saw Plaintiff slumped over with her hand on her chin, appearing to be asleep on the job.  Sleeping on the job is a terminable offense at Defendant's plant.  Reed immediately notified Maintenance Planner, Sam Calloway, who then also witnessed Plaintiff's misconduct.  Calloway, being the only salaried maintenance supervisor on the premises at that time, entered the room and asked Plaintiff if she had completed her assigned work orders.  Plaintiff lifted her head and responded that she had.  When Plaintiff's immediate supervisor, Griffin, arrived later that day, Calloway informed him that he had witnessed Plaintiff asleep on the job and advised Griffin to report her.

At some point during that day, Calloway informed Engineering Maintenance Manager Richard Ferrell of Plaintiff's conduct: Ferrell instructed Calloway to notify Denney, Human Resources Representative for Defendant.  After Calloway reported Plaintiff to Denney, Denney notified Complex Human Resources Manager Maria Rivera of the incident.  It is unclear why Calloway ended up reporting Plaintiff, especially in light of the fact that he advised Griffin to report her.  But, for the purposes of this motion, such a discrepancy appears minute.

Defendant's discipline policy mandates that the employee's immediate supervisor make the initial recommendation regarding termination following an

incident of a terminable offense.  Once a recommendation is made, Human Resources investigates the incident and either approves or denies the supervisor's recommendation.  In Plaintiff's case, Griffin went on vacation immediately following the incident and did not recommend Plaintiff for termination until he returned two weeks later on the 16th.  Upon receiving Griffin's recommendation, Human Resources informed Plaintiff that she was suspended for three days pending an investigation for sleeping on the job.  Plaintiff's Disciplinary Record for Termination (DRT) supports this reason for her second suspension.  The next day, Defendant obtained written statements from Calloway and Reed regarding the incident.

During her investigation, Rivera reviewed all the relevant documentation, including the DRT, Calloway and Reed's witness statements, disciplinary and termination logs, and, to ensure discipline continuity, personnel files of other individuals who had been reported for the same offense.  Plaintiff was terminated effective November 24, 2008, for sleeping on the job.[3]

After her termination, Plaintiff requested that Director of Operations Tom Lee review her termination by way of Defendant's peer review process.  An employee has

---

[3] Defendant maintains that Plaintiff was terminated because she slept on the job and because she was suspended twice within six months, both of which are terminable offenses by themselves. Viewing the facts in the light most favorable to Plaintiff, for the purpose of her prima facie case, the Court will accept the reasons listed in the DRT as the reasons for her termination.

the option of filing for peer review when a personnel decision is made.  This management review process affords the employee the opportunity to appeal a disciplinary action.  Per Plaintiff's request, Lee reviewed all of the information leading up to Plaintiff's termination and upheld Human Resource's decision to terminate Plaintiff.

## PROCEDURAL HISTORY

After receiving a Notice of Right to Sue by the Equal Employment Opportunity Commission (EEOC) on July 1, 2010, Plaintiff filed suit against Defendant on September 2, 2010, alleging claims of unpaid wages/overtime pursuant to FLSA, 29 U.S.C. § 201, et seq., race and gender discrimination, hostile work environment, and retaliation under Title VII, 42 U.S.C. § 2000e, et seq.

On July 12, 2011, Defendant filed this instant motion for summary judgment.  In Plaintiff's response, she abandons her FLSA, retaliation, and hostile work environment claims.  Plaintiff proceeds solely on the basis that Defendant unlawfully terminated her on the basis of her race and gender in violation of Title VII.

## LEGAL STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment must be granted "if the movant shows that there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  A genuine issue of material fact only exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  Thus, summary judgment must be granted if there is insufficient evidence for a reasonable jury to return a verdict for the nonmoving party or, in other words, if reasonable minds could not differ as to the verdict.  See id. at 249-52.  When ruling on a motion for summary judgment, the court must view the facts in the light most favorable to the party opposing the motion.  Welch v. Celotex Corp., 951 F.2d 1235, 1237 (11th Cir. 1992).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact" and that entitle it to a judgment as a matter of law.  Celotex, 477 U.S. at 323 (internal quotation marks omitted).  If the moving party discharges this burden, the burden then shifts to the nonmoving party to go beyond the pleadings and present

specific evidence showing that there is a genuine issue of material fact.  See Fed. R. Civ. P. 56(e); see also Celotex, 477 U.S. at 324-26.

## DISCUSSION

The relevant portion of Title VII provides that an employer may not "discharge any individual … with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, [or] sex."  42 U.S.C. § 2000e-2(a)(1).

Claims of race and gender discrimination based on circumstantial evidence, as is the case here, are evaluated under the burden shifting framework developed in McDonnell Douglas v. Green, 411 U.S. 792 (1973).  First, a plaintiff must establish a prima facie case, or "facts adequate to permit an inference of discrimination." Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997).  The elements of a plaintiff's prima facie case depend on the type of discrimination alleged.  Id.  If the plaintiff establishes a prima facie case, the burden of production shifts to the employer to articulate some legitimate, nondiscriminatory reason for its action.  Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 256 (1981).  The burden then shifts back to the plaintiff who must show that the employer's proffered reasons for its actions were not

the real reasons that motivated its conduct, but that the employer's proffered reasons were merely pretext for discrimination.  Id. at 253.

Here, Plaintiff alleges that Defendant wrongfully discharged and disciplined her by discriminating based on her race and/or gender.  Although, chronologically, Plaintiff's termination followed Plaintiff's suspension, both parties discuss her termination claim first, reserving a large portion of their memorandum to analyze this claim.  Therefore, the Court will also begin with Plaintiff's termination claim.

### 1.  Plaintiff's November 2008 Termination

#### A.  Prima Facie Case

First, Plaintiff asserts that she was discharged due to her race and/or gender. To establish a prima facie case of Title VII race and gender discrimination, a plaintiff must show that (1) she is a member of a protected class; (2) she was qualified for her position; (3) she was subjected to an adverse employment action; and (4) her employer treated similarly situated employees outside of her protected class more favorably than she was treated, or she was replaced by an individual outside of her protected class.  Maynard v. Bd. of Regents of Div. of Univs. of Fla. Dept. of Educ., 342 F.3d 1281, 1289 (11th Cir. 2003) (citation omitted).

11

Here, Defendant concedes the first three elements of Plaintiff's prima facie case. Defendant does argue, however, that Plaintiff is unable to produce any evidence of the fourth element—that similarly situated employees outside of Plaintiff's protected class were treated more favorably, or that she was replaced by an individual outside of her protected class.  Therefore, the fourth element of Plaintiff's prima facie case is of issue.

Plaintiff argues that there is an additional alternative to the fourth element and spends much of her Response arguing that she was not sleeping on the job.  Relying on Jones v. Gerwens, 874 F.2d 1534 (11th Cir. 1989), Plaintiff contends that rather than identifying a comparator or a male non-minority replacement, she may instead prove that she did not sleep on the job and therefore did not violate Defendant's work rule. See 874 F.2d at 1540.  However, in Jones v. Bessemer Carroway Medical Center, 137 F.3d 1306 (11th Cir. 1998), the Eleventh Circuit disregarded its "dicta" in Gerwens that Plaintiff now relies, and noted:

> [N]o plaintiff can make out a prima facie case by showing just that she belongs to a protected class and that she did not violate her employer's work rules.  The Plaintiff must also point to someone similarly situated (but outside of her protected class) who disputed a violation of the rule and who was, in fact, treated better.

137 F.3d 1306 at 1311 (citation omitted) (superseded in part by 151 F.3d 1321 (11th Cir. 1998)).  Thus, "regardless of whether [plaintiff] committed the alleged rule violations,

12

she is still required to show that a similarly situated male who committed the same rule violations received more favorable treatment than her." Miller-Goodwin v. City of Panama City Beach, Fla., 385 F. App'x 966, 971 n.2 (11th Cir. 2010).   Accordingly, the fourth element as announced in Maynard will guide this Court's determination of Plaintiff's prima facie case.  342 F.3d at 1289 (explaining that plaintiff must identify a valid comparator or show she was replaced by someone outside of plaintiff's protected class to establish the fourth element of her prima facie case).

1.  Plaintiff's Proffered Comparators

Plaintiff offers two Caucasian male employees as comparators, Joe Paulsen and Lamar Dennis.  Joe Paulsen is a maintenance technician for Defendant and was part of Plaintiff's maintenance team.  Plaintiff claims that Paulsen slept on the job but was not terminated.

As an initial matter, there is some dispute between the parties as to whether Plaintiff's testimony that she saw Paulsen asleep was contradicted in a later deposition.   However, for the purposes of this Motion, this point is irrelevant. "Disparate discipline cannot be shown without first showing that the employer was aware of the comparator's misconduct." Vickers v. Fed. Express Corp., 132 F. Supp. 2d 1371, 1380 (S.D. Fla. 2000); Amos v. Tyson Foods, Inc., 153 F. App'x. 637, 647 (11th

13

Cir. 2005) (holding management must be aware of comparator's misconduct); <u>Knight v. Baptist Hosp. of Miami, Inc.</u>, 330 F.3d 1313, 1317 n.5 (11th Cir. 2003) (applying the same to a supervisor).  Thus, the relevant inquiry is not whether Plaintiff witnessed Paulsen sleeping, but whether Paulsen was reported for sleeping on the job.

Here, Plaintiff contends that she reported Paulsen's behavior to Line Lead Reed. <u>See</u> Pl's. Dep. 470:24-25; Pl's. Aff. 17.  Defendant asserts, however, that Paulsen's conduct was never reported to Human Resources.  However, Defendant fails to establish any basis for this Court to conclude that Reed was not a sufficient supervisor for the purpose of establishing Defendant's awareness of Paulsen's misconduct. Indeed, Defendant does not assert anything more than its factual recitation that Human Resources was unaware of Paulsen's conduct.  Without more, the Court cannot conclude that Plaintiff's report to Reed was insufficient.  Accordingly, the Court finds that there is a genuine issue of material fact as to whether Reed qualifies as management or a supervisor for the purpose of establishing Defendant's awareness of Paulsen's misconduct.  Therefore, whether Paulsen is a proper comparator is an issue that should be resolved at trial.

Plaintiff's second comparator is Lamar Dennis, a janitor for Defendant that was caught sleeping on the job and was only suspended for three days.  Defendant first

argues that Dennis and Plaintiff do not have the same job title and therefore are not sufficiently similar.  However, as Plaintiff notes, "the relevant inquiry is not whether the plaintiff and would-be comparator have the same job title, but whether they are both subject to the same employment policies." Robertson v. Jefferson Cnty. Rehab. & Health Ctr., 201 F. Supp. 2d 1172, 1178 (N.D. Ala. 2002) (citation omitted).  Here, Raymond Henson, a Human Resources Associate Relations Representative, testified that Defendant's discipline rules apply equally to all employees.  Henson Dep. 24:12-14.  Defendant does not offer any evidence to contradict this fact.  Accordingly, the difference in job title will not preclude Dennis from being considered a proper comparator.

Defendant next argues that Dennis was not terminated because, unlike Plaintiff, he had a valid medical excuse for sleeping.  However, the relevant inquiry at the prima facie stage of the analysis is whether "the two employees are involved in or accused of the same offense and are disciplined in different ways." Pearson v. Macon-Bibb Cnty. Hosp. Auth., 952 F.2d 1274, 1280 (11th Cir. 1992) (quotation omitted).  Distinctions between the defendant's disciplinary action "may bear on the defendant's legitimate reasons for its actions and the difference in the treatment of the two employees, but it should not defeat a prima facie case." Yates v. Hall, 508 F. Supp. 2d

15

1088, 1099 (N.D. Fla. 2007).  Here, Dennis was caught sleeping on the job and was not terminated.  Any justification that Defendant has to offer for not terminating Dennis will be assessed at the pretext stage of the analysis.  Accordingly, for the purposes of her prima facie case, Dennis is a proper comparator.

2.  Replacement of Individual Outside of Protected Class

Even if Plaintiff was unable to identify a proper comparator, she nevertheless establishes her prima facie case by showing that there is a genuine issue of material fact as to who replaced Plaintiff.  As an initial matter, Defendant argues that under Denney v. City of Albany, 247 F.3d 1172 (11th Cir. 2011), Plaintiff must offer a proper comparator *and* that she was replaced by a member outside of her protected class.  See 247 F.3d at 1183.  While Defendant correctly identifies this requirement for a failure to promote claim, as was the case in Denney, Defendant wrongly applies this requirement to a wrongful termination claim.  The Eleventh Circuit has made clear that a plaintiff alleging discriminatory discharge may satisfy the fourth element of the prima facie test by demonstrating that she was "replaced by a person outside of his protected class *or* was treated less favorably than a similarly-situated individual outside his protected class."  Maynard, 342 F.3d at 1289 (emphasis added); Pate v. W.

16

Publ'g Corp., 416 F. Supp. 2d 1275, 1282 (M.D. Ala. 2006) (applying Maynard to a Title VII sex discrimination case).

Here, Plaintiff argues that she was replaced by Eddie Bramlett—a Caucasian male.  Sam Calloway, the maintenance planner who reported Plaintiff for sleeping on the job, testified, "I don't remember [who replaced Plaintiff].  We hired a man named Eddie Bramlett who helped maintain line one," Plaintiff's line.  Calloway Dep. 17: 24-25.  Defendant concedes that Plaintiff was replaced by a male, but vehemently argues that Antwan Thomas, an African-American male, replaced Plaintiff, citing Antwan Thomas and Human Resources Manager Maria Rivera's testimony in support.  Without addressing why the Court should disregard Calloway's testimony, Defendant appears to imply that Calloway's testimony does not equal the value of Rivera and Thomas' testimony.  However, without a legal and factual basis, the Court refrains from drawing such a conclusion.

Plaintiff, as a non-moving party, has the burden on summary judgment to "designate specific facts showing that there is a genuine issue for trial."  Celotex, 477 U.S. at 324-25.  Here, this is exactly what Plaintiff has done.  Plaintiff has pointed to testimonial evidence that she was replaced by a Caucasian male.  While Defendant quotes Calloway's testimony, presumably to indicate the uncertainty in his answer,

17

Defendant does nothing more.  Defendant fails to explain why this discrepancy is not a genuine issue of material fact, or for what reason, if any, the Court should consider Rivera and Thomas' testimony in lieu of Calloway's.  Instead, Defendant states that Rivera is the "custodian of the employee's personnel files," leaving the Court to infer that Calloway is without personal knowledge to testify about this issue.  Doc. 32, p. 2. Such an inference appears unwarranted not only because Calloway was the individual with enough authority to report Plaintiff for sleeping on the job, but also because Calloway was a salaried supervisor responsible for planning and scheduling the work orders completed by the mechanics.  It is therefore reasonable to conclude that Calloway was aware of who replaced Plaintiff.  Drawing this reasonable inference in favor of Plaintiff, the Court finds that there is a genuine issue of material fact as to whether Plaintiff was replaced by a Caucasian or African-American male.

Accordingly, Plaintiff has established her prima facie case of race and gender discrimination under Title VII.

### B.  Defendant's Legitimate Nondiscriminatory Reason

Because Plaintiff has made out a prima facie case of race and gender discrimination, the burden now shifts to Defendant to articulate a nondiscriminatory reason for its employment action.   Here, Defendant proffers two legitimate,

18

nondiscriminatory reasons why Plaintiff was terminated, both of which are, by themselves, terminable offenses: Plaintiff was caught sleeping on the job, and Plaintiff was suspended twice in six months.

The Court finds that Defendant's reasons are adequate to satisfy the employer's burden of production.  See Vessels v. Atlanta Ind. School Syst., 408 F.3d 763, 769-770 (11th Cir. 2005) (employer's burden is exceedingly light and is satisfied as long as the employer articulates a clear and reasonable non-discriminatory basis for its actions).  Thus, because Defendant has met its burden of providing a legitimate, nondiscriminatory reason for its actions, Plaintiff must now show that Defendant's reasons are merely pretext and the real reason for its decision was race and/or gender discrimination.

### C. Pretext

Plaintiff offers several arguments as to why Defendant's reasons are merely pretext for discrimination: inconsistent reasons for termination; inconsistent application of workplace policy; fabrication of evidence; and a racial discriminatory animus.  While none of this alone is sufficient evidence to establish pretext, the Court finds some of Plaintiff's evidence offered on pretext, combined with Plaintiff's prima facie case, give rise to circumstantial evidence sufficient to demonstrate pretext.

19

First, Plaintiff argues that Defendant did not terminate Paulsen for sleeping on the job, an adverse decision to Defendant's policy.[4]   Inconsistent application of workplace policy may constitute circumstantial evidence of discrimination and, in the appropriate case, give rise to a triable issue of fact.   Ash v. Tyson Foods, Inc., 129 F. App'x 529, 533 (11th Cir. 2005).   However, demonstrating deviation from company policy alone is not sufficient; "a plaintiff's showing that an employer's reason for not following a company policy was pretextual does not establish intentional discrimination without a finding that the employer acted because of [race or gender]." Id. (citation omitted).   Here, Defendant's Memorandum and Reply are bereft of any explanation for its inconsistent disciplinary decision, other than its factual summation that Plaintiff did not report Paulsen's conduct to Human Resources.   Nevertheless, by itself, evidence of an inconsistent practice does not establish that the employer acted because of Plaintiff's race or gender.

Also at the pretext stage, Plaintiff offers Don Brown's testimony of the "favoritism" of Caucasian employees over African-American employees to prove

---

[4] Plaintiff also argues that Defendant inconsistently applied its policy by not terminating Plaintiff's second comparator, Dennis.  However, the Court accepts that Defendant made its decision to not terminate Dennis based on Dennis' medical excuse, specifically that his chemotherapy medication caused him to be drowsy and fatigued.  Plaintiff's argument on this point is solely that Defendant was unaware of Dennis' medical excuse when it made its decision.  The Court finds that the evidence in which Plaintiff relies is read out of context.  See Dennis Dep. 22:22-23.

discriminatory animus. <u>See</u> Brown Dep. 9-11. However, similar to Plaintiff's evidence of an inconsistent application of policy, the Court finds that Brown's testimony, by itself, is insufficient to establish pretext. <u>See</u> <u>Moore v. Ala. State Univ.</u>, 980 F. Supp. 426, 437 (M.D. Ala. 1997) (holding at the pretext stage, plaintiff must show that defendant's decision was motivated by a discriminatory animus). However, Brown's testimony, when combined with Plaintiff's prima facie case and evidence of Defendant's inconsistent application of policy, is sufficient circumstantial evidence of racial discrimination from which a reasonable jury could infer Defendant's decision was made with a racially discriminatory intent.

The Eleventh Circuit recently explained that "the plaintiff will always survive summary judgment if he presents circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent." <u>Smith v. Lockheed-Martin Corp.</u>, 644 F.3d 1321, 1328 (11th Cir. 2011) (holding plaintiff survived summary judgment without identifying a comparator because of circumstantial evidence) (citation omitted). Stated another way, "[a] triable issue of fact exists if the record, viewed in a light most favorable to the plaintiff, presents a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." <u>Id.</u> (quotation omitted). Evidence establishing pretext may include

the same evidence initially offered to establish the prima facie case of discrimination. Wilson v. B.E. Aerospace, 376 F.3d 1079, 1088 (11th Cir. 2004).

Here, Plaintiff has presented a "convincing mosaic" of circumstantial evidence. Plaintiff presents several pieces of record evidence that lead to an inference of intentional discrimination: her comparator, Paulsen, was not disciplined for sleeping on the job; Defendant's inability to explain why Paulsen was not disciplined or why Plaintiff's report to Reed was insufficient; testimonial evidence that a Caucasian male replaced Plaintiff; and testimonial evidence of management's inconsistent treatment of Caucasian and African-American employees.  Accordingly, from the culmination of this evidence, the Court concludes that a reasonable juror could infer that Defendant intentionally discriminated against Plaintiff because of her race, and therefore that Defendant's reasons are pretext for discrimination.

However, the Court does not come to the same conclusion in regards to Plaintiff's gender discrimination claim.  Without more, Plaintiff's prima facie case and evidence of Defendant's inconsistent application of policy is insufficient to establish circumstantial evidence of intentional gender discrimination.

Therefore, Defendant's Motion for Summary Judgment over Plaintiff's Title VII race and gender discrimination claims is **GRANTED in part** and **DENIED in part**.

22

Defendant's Motion for Summary Judgment as to Plaintiff's race discrimination claim is **GRANTED**.  Defendant's Motion for Summary Judgment as to Plaintiff's gender discrimination claim is **DENIED**.

### 2.  Plaintiff's August 2008 Suspension

#### A. Prima Facie Case

Plaintiff's second race and gender Title VII claim is based on her August 2008 suspension.  To establish a prima facie case in a discipline discrimination claim, Plaintiff must show that (1) she is a member of a protected class; (2) she was qualified for her position; (3) she was subjected to an adverse employment action; and (4) her employer treated similarly situated employees outside of her protected class more favorably than she was treated.  Burke-Fowler v. Orange Cnty. Fla., 447 F.3d 1319, 1323 (11th Cir. 2006).  As was the case for Plaintiff's termination claim, none of the first three elements of Plaintiff's prima facie case are at issue here.  However, Defendant does argue that Plaintiff cannot prove the fourth element of her prima facie case.  Thus, at issue is whether Plaintiff can identify a similarly situated employee who engaged in the same or similar misconduct as Plaintiff but who was not suspended.

1.  Plaintiff's Proffered Comparators

23

According to her DRS, Plaintiff was suspended for two reasons: failing to finish work assignments and filling out emergency work orders without the permission or instruction of her supervisors.   Plaintiff identifies several non-minority males engaging in identical conduct as potential comparators.

First, Plaintiff identifies two co-workers, Donald Buttrom and Lawrence Faulks, each of whom testified that they were not suspended for failing complete work orders on time.  Plaintiff also identifies a third co-worker Giles Denstley, who testified that he had filled out an emergency work order without the permission or instruction of his supervisor and was not suspended.

"In order to satisfy the similar offenses prong, the comparators' misconduct must be nearly identical to the plaintiff's in order to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges." Silverea v. Orange Cnty. Sch. Bd., 244 F.3d 1253, 1259 (11th Cir. 2001) (quotation omitted).  This nearly identical standard requires the comparator's conduct to be of the same or similar "quantity and quality" to the plaintiff's conduct.  Here, Buttrom, Faulks, and Dentsley only admitted to committing one of the two offenses that Plaintiff was suspended for, not both. See Maniccia v. Brown, 171 F.3d 1364, 1368 (11th Cir. 1999) (finding that female plaintiff was not similarly situated to male comparators

24

where each male comparator was involved in a "single incident of misconduct," and plaintiff committed at least four policy violations); <u>Bessemer</u>, 137 F.3d at 1313 (noting that Plaintiff's multiple instances of misconduct on the same day may simply have been the straw that broke the camel's back) (quotation omitted).  Accordingly, none of these individuals meets the nearly identical standard.

Plaintiff also points to the testimony of two other individuals, Clint Brantley and Don Brown, who testified that other employees who failed to finish assignments and who filled out emergency work orders without permission were never suspended. However, Brantley and Brown's testimony did not identify any employee who had committed these acts.   Such vague and speculative testimony is insufficient to establish a comparator.  <u>See</u> <u>Williams v. Alabama Department of Transportation</u>, 509 F. Supp. 2d 1046 (M.D. Ala. 2007) (finding that plaintiff's testimony naming several employees who had committed the same infractions was "too vague and speculative to permit an informed decision" as to whether the comparator's conduct was nearly identical). Furthermore, neither Brantley nor Brown testified that they themselves had committed both offenses, and therefore, they also are improper comparators.  Thus, Plaintiff fails to identify a similarly situated individual.

    2.  <u>Other Evidence of Discrimination</u>

Plaintiff argues that if her comparators are insufficient, then she can nevertheless produce other evidence of discrimination sufficient to establish her prima facie case of discrimination.  See Wilson, 376 F.3d at 1092 ("summary judgment is appropriate [only] where no other evidence of discrimination is present").  Presumably offered to prove this assertion, Plaintiff attempts to discredit Defendant's reasons for suspending her.  First, Plaintiff asserts that maintenance employees were "regularly unable to complete work orders and these work orders were turned over to the next shift" without punishment.  Doc. 30, p. 14.  Second, Plaintiff argues that it was an "accepted practice for the maintenance employees to use emergency work orders to make note of things they encountered during the work day."  Id.

The Court does not find that this evidence is other evidence of discrimination. "[U]nder Title VII, an employer lawfully may take action for any non-discriminatory reason, good or bad, fair or unfair, or for no reason at all."  Pollocks v. Sunland Training Ctr, 85 F. Supp. 2d 1236, 1245 (N.D. Fla. 2000).  Here, at best, Plaintiff offers evidence that Defendant disciplined her but did not discipline others.  However, Plaintiff fails to connect this evidence with any discriminatory practice.  Discipline without discrimination does not violate Title VII.  Thus, because Plaintiff has failed to produce other evidence of discrimination or a proper comparator, Defendant's Motion

for Summary Judgment on Plaintiff's Title VII race and/or gender discipline claim is **GRANTED**.

**CONCLUSION**

As set forth above, Defendant's Motion for Summary Judgment [Doc. 20] is **GRANTED in part and DENIED in part**.   Defendant's Motion for Summary Judgment as to Plaintiffs' Title VII discriminatory termination claim based on her gender and Plaintiff's discriminatory discipline claim based on her race and gender is **GRANTED**.  Defendant's Motion for Summary Judgment as to Plaintiff's abandoned FLSA, hostile work environment, and retaliation claims is **GRANTED**.  Defendant's Motion for Summary Judgment as to Plaintiff's Title VII discriminatory termination claim based on her race is **DENIED**.

**SO ORDERED,** this  9th day of January, 2012.

S/  C. Ashley Royal
C. ASHLEY ROYAL
UNITED STATES DISTRICT JUDGE

LMH/aes/ssh/jlr

27